UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

CHARLES B. CROWE,        )
                         )
    Plaintiff,         )
                         )          Civil Case No.
v.                      )          5:17-cv-410-JMH
                         )
NANCY C. BERRYHILL,      )    **MEMORANDUM OPINION & ORDER**
ACTING COMMISSIONER OF SOCIAL  )
SECURITY,           )
                         )
    Defendant.         )

***

Plaintiff Charles Crowe brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. The Court, having reviewed the record and the motions filed by the parties, will **AFFIRM** the Commissioner's decision as no legal error occurred and it is supported by substantial evidence.

I.

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs*., 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.

Plaintiff filed an application for Title XVI Supplemental Social Security Insurance Benefits in May 2014, asserting disability as of January 1, 2013. [TR 179, 192]. The claim was denied initially and upon reconsideration. [TR 111, 118]. Crowe then pursued his claims at a hearing in front of an ALJ in May 2016. [TR 36–76]. ALJ Ronald Kayser issued a decision in June 2016, denying Crowe's claims and finding he was not disabled. [TR 20–31]. The Appeals Council denied review. [TR 1–6]. This appeal followed pursuant to 42 U.S.C. § 405(g). Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are ripe for review. [DE 12, 13, 15].

Crowe alleges onset of disability at age 34. [TR 179]. He has a tenth-grade education. [TR 41–42]. In high school, Crowe was enrolled in special education classes in math. [TR 42]. Crowe engaged in past relevant work as an auto detailer, groundskeeper, housekeeper, and pressure washer. [TR 43-46, 71–72, 197–98].

Crowe claims disability due to several physical impairments—including MRSA, head trauma, degenerative disk disease, and shoulder impairments—and a learning disability. [TR 196]. At the hearing in front of the ALJ, Crowe testified that injuries to his back and shoulder are currently keeping him from working. [TR 48]. Crowe reports suffering injuries to his back, a fractured skull, and memory problems after being thrown from a moving vehicle in April 2014. [TR 28, 48, 53-54, 67-68].

Crowe also testified he lives with his girlfriend and relies on her and food stamps for income. [TR 46–47]. He further testified that he watches TV all day and smokes a pack of cigarettes per day. [TR 53]. He does not have a driver's license and depends on his mother-in-law[1] to travel places. [TR 57–58]. Crowe estimated he can lift about ten pounds. [TR 66]. Even so, Crowe also testified that he can prepare simple meals, can use a cell phone, assists with caring for pets, and can wash a few

---

[1] Crowe is unmarried but has been in a relationship with his current girlfriend for over twenty years and refers to her mother as his mother-in-law. [TR 40, 47-48].

dishes. [TR 54, 59-60, 67]. He also testified that he volunteers in an office around five hours a week. [TR 61-62].

In October 2014, Crowe was examined by Mary Genthner, a certified clinical psychologist. [TR 430-35]. Genthner performed several cognitive tests and conducted a clinical interview. [TR 431]. Crowe was found to have a verbal comprehension score of 61, a perceptual reasoning score of 63, a working memory score of 63, a processing speed score of 62, and full scale IQ of 56. [TR 432-33]. Genthner diagnosed Crowe with an intellectual disability of mild severity, an unspecified tic disorder, and somatic symptom disorder. [TR 433-34]. Genthner concluded that Crowe's intellectual and cognitive deficits could limit his ability to perform certain tasks. [TR 434-35]. Two state agency psychologists reviewed the record and did not find that Crowe met or equaled Listing 12.05. [TR 82-83, 86-89, 98-99, 102-04].

After the hearing and considering all the evidence, the ALJ issued his decision on June 23, 2016. [TR 23]. At Step One, the ALJ determined that Crowe has not engaged in substantial gainful activity since May 11, 2014. [TR 25]. At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: intellectual disability, history of substance abuse, recurrent MRSA infections, hepatitis, left rotator cuff tear, and possible osteoarthritis. [Id.]. But, at Step Three, the ALJ found that none of those impairments or combination or impairment met or

4

medically equaled the severity of any of the listed impairments. [TR 25-27]. In reaching this conclusion, ALJ Kayser found that Plaintiff had not satisfied the criteria of Listings 12.02, 12.05, and 12.09. [TR 25]. Before proceeding to Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c). Specifically, the ALJ found Plaintiff could perform the following tasks:

> {L]ifting/carrying 50 pounds 50 pounds occasionally and 20 pounds frequently; standing/walking 6 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; frequent climbing ramps and stairs, balancing, stooping, crouching, kneeling, and crawling; avoid ropes/scaffolds/ladders and unprotected heights; reaching overhead bilaterally frequently; would be able to understand, remember, and carry out simple instructions; make judgments that are commensurate with functions of unskilled work; respond appropriately to supervision, coworkers, and work situations so long as the work has no production quota requirements; and be able to deal with changes in routine work setting.

[TR 27].

The ALJ then concluded, at Step Four, that Crowe is capable of performing past relevant work as an auto detailer, groundskeeper, housekeeper, and pressure washer, which do not require the performance of work-related activities precluded by Crowe's RFC. [TR 30]. In addition, the ALJ determined that given Crowe's age, education, work experience, and RFC, "there are other

jobs that exist in significant numbers in the national economy that the claimant also can perform." [*Id.*]. ALJ Kayser based his conclusion on testimony from a vocational expert ("VE") that Plaintiff could be able to perform the requirements of occupations such as kitchen helper (1,700 jobs in Kentucky, 454,000 nationally), laundry worker (700 in Kentucky / 48,000 nationally), and packer (2,200 in Kentucky / 165,000 nationally). [TR 31]. Thus, the ALJ determined Plaintiff was not disabled under the Social Security Act.

Plaintiff argues the ALJ erred in finding Plaintiff did not meet or equal Listings 12.05B and 12.05C. [DE 13, p. 4]. Crowe also argues his procedural due process rights were violated because the ALJ cited an unpublished opinion in his decision. [*Id.* at p. 9]. The Commissioner contends that the ALJ's decision was proper and should be affirmed.

III.

When reviewing the ALJ's ruling, this Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs*.,

25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* We are to affirm the decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

IV.

## A. Listing 12.05

As an initial matter, Listing 12.05 was revised in September 2016 with an effective date of January 17, 2017. 81 Fed. Reg. 66,137, 66,138 (Sept. 26, 2016). The Social Security Administration "expect[s] that [f]ederal courts will review [the Commissioner's] final decisions using the rules that were in effect at the time [the Commissioner] issued the decision." *Id.* at 66,138 n.1. When the ALJ denies benefits and the Appeals Council denies review, the ALJ's decision is reviewed as the Commissioner's final decision. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h). Here, the ALJ's decision was dated June 23, 2018. Thus, the previous version of Listing 12.05 is applicable to this review. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (effective June 23, 2016).

Listing 12.05 covers the mental disorder of intellectual disability. 20 C.F.R. pt. 404 subpt. P, app. 1, § 12.05. To meet

the 12.05 listing standard, a claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22." *Id.* Additionally, the claimant must meet the criteria in subparts A, B, C, or D. *Id.* 12.05B requires "[a] valid verbal, performance, or full scale IQ of 59 or less. *Id.* 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 to 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.; see Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

"The plaintiff has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability . . . ." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). A claimant must demonstrate impairment that satisfies the diagnostic description of the listed impairment in the introductory paragraph and any one of the four listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A)(3); 12.05.

Crowe argues that the ALJ erred in finding Crowe did not meet the criteria in Listing 12.05. [DE 13, p. 4]. Additionally, Crowe argues that the ALJ applied an incorrect standard in determining whether deficits in adaptive functioning exist. Alternatively, the Commissioner contends that the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standard.

Substantial evidence exists to support the ALJ's conclusion that Crowe does not meet the listing for intellectual disability. First, the evidence does not demonstrate or support the onset of "significantly subaverage general intellectual functioning with deficits in adaptive functioning" before age 22.

To demonstrate subaverage intellectual functioning and deficits in adaptive functioning before age 22, Crowe relies heavily on the findings of Mary Genthner. [TR 429-35]. Genthner's findings show IQ scores that are in the "extremely low" range that would meet the score requirements in 12.05B and 12.05C. [TR 432-33]. Genthner's report stated that special education placement in school could not be confirmed based on school records. [TR 433]. Furthermore, while Crowe reported early social problems and anxiety, he noted no history of mental health treatment. [TR 431]. Finally, Genthner's report notes that Crowe was unwell on the day of the examination. [TR 431].

Even so, the report does not conclusively demonstrate that Crowe's intellectual disability manifested before age 22. Even if the IQ tests in Genthner's report were valid, the ALJ's decision is not reversible because "the mere fact of a qualifying IQ score does not require that the ALJ find mental retardation . . . when substantial evidence supports the contrary conclusion or the claimant's allegations of her capabilities are not deemed

credible." Courter v. Comm's of Soc. Sec., 479 F. App'x 713, 721 (6th Cir. 2012); *see Foster*, 279 F.3d at 354.

As noted earlier, the record, including Genthner's report, was reviewed by two state agency psychologists. [TR 82-83, 86-89, 98-99, 102-04]. Neither state agency psychologist found that Crowe met the criteria under 12.05. [TR 82-83, 86-89, 98-99, 102-04]. Additionally, Crowe has not demonstrated sustained treatment for mental health issues in the past. [TR 29; *see* 431]. Crowe has also demonstrated past ability to perform unskilled work. [TR 27; *see* 43-46, 71-72, 197-98]. Additionally, Crowe reported that he can prepare simple meals, can use a cell phone, assists with caring for pets, and can wash a few dishes. [TR 54, 59-60, 67]. He also testified that he volunteers in an office around five hours a week. [TR 61-62]. Thus, substantial evidence exists in the record to support the ALJ's decision to discredit the opinion evidence provided by Genthner based on other evidence in the record that points to the opposite conclusion. [TR 29].

Additionally, Crowe relies on his low high school test scores and placement in special education for math as proof of intellectual disability during the developmental period. [DE 13, p. 5; TR 206]. But this information, without more, also fails to demonstrate that Crowe's intellectual disability manifested prior to age 22. *See Hayes v. Comm'r of Soc. Sec.*, 357 Fed. App'x 672, 677 (6th Cir. 2009). There could be numerous reasons for Crowe's

poor academic performance in high school and his failure to complete education past tenth grade. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("The only evidence in the record pertaining to this issue is that Foster left school after completing the ninth grade, but why Foster did not continue her studies is unclear."). Crowe's academic performance during high school provides little evidence of an intellectual disability during the developmental period and standing alone, is not dispositive.

Furthermore, Crowe contends that "IQ scores should be deemed lifelong." [DE 13, p. 5]. Still, there is ample evidence in the record to suggest that Crowe's intellectual functioning could have changed or been impacted later in life. The record indicates that Crowe suffered a fractured skull and memory problems after being thrown from a moving vehicle in April 2014. [TR 28, 48, 53-54, 67-68]. Crowe's intellectual functioning could have been significantly worsened by this accident in April 2014 and provides further justification for the ALJ's decision that Crowe has failed to prove an intellectual disability before age 22.

Lastly, the ALJ recognized that there is no IQ testing in the record prior to Crowe reaching age 22. [TR 27]. Crowe argues that the ALJ erroneously used this as a basis in determining the Crowe did not meet 12.05. [DE 13, p. 5]. The ALJ's observation is simply a statement of fact; the record indicates no IQ or

performance testing prior to Crowe reaching age 22. *See Foster*, 279 F.3d at 354 ("[Claimant] has failed to show that her general intellectual functioning was 'significantly subaverage' prior to that age. None of her testing or evaluation was contemporaneous with her developmental period."). More importantly, the ALJ did not base the decision solely upon the lack of IQ testing prior to age 22. The ALJ's finding that Crowe did not demonstrate an intellectual disability or deficits in adaptive functioning that initially manifested before age 22 is supported by relying on the opinions of two state agency psychologists, a head injury suffered by Crowe in April 2014, no history of mental health treatment, Crowe's past ability to perform unskilled labor, and a lack of IQ of performance testing before Crowe turned 22.

Ultimately, Genthner's report and Crowe's poor academic results in high school are insufficient to demonstrate that Crowe suffers from subaverage general intellectual functioning with deficits in adaptive functioning that manifested before age 22. The ALJ's decision that Crowe has not demonstrated intellectual disability or deficits in adaptive functioning prior to age 22 is supported by substantial evidence in the record. Since Crowe has failed to demonstrate that he had an intellectual disability prior to age 22, he cannot meet Listing 12.05.

**B. Proper Standard to Evaluate Deficits in Adaptive Functioning**

Second, Crowe argues that the ALJ applied an erroneous standard in considering whether Crowe meets the deficits in adaptive functioning requirement in Listing 12.05. [DE 13, p. 7-8].

In the decision, the ALJ stated "the claimant does not have significantly subaverage deficits in adaptive functioning . . . ." [TR 27]. Crowe is correct that this articulation of the standard for intellectual disability is not precisely correct per the text of 12.05. Still, the ALJ stated the correct standard, "significantly subaverage general intellectual functioning with deficits in adaptive functioning," just a few sentences before his imprecise statement of the standard. [*Id.*].

Moreover, the ALJ's analysis demonstrates that he applied the correct standard in making his determination regarding deficits in adaptive functioning in Listing 12.05. The ALJ considered the reports of the consultative examiners and observed that none of the examiners had noted difficulty communicating with Crowe. [*Id.*]. The ALJ reviewed the report and findings of Genthner after testing and examination of Crowe. [Id.]. The ALJ considered the academic history of Crowe in high school and questioned him about his academic history during examination at an in-person hearing. [Id.; *see* TR 41-42]. The ALJ considered Crowe's personal life, including his life at home, his relationship with his girlfriend

and mother-in-law, his relationship and role in raising his two daughters, his ability to care for his personal needs, and his ability to wash some dishes and cook simple foods. [TR 27; *see* TR 40, 47-70]. The ALJ also considered Crowe's occupational history in making his determination, noting that Crowe had held multiple unskilled positions and had earned in excess of $10,000 per year in several years. [TR 27; *see* 43-46]. In sum, the ALJ considered numerous factors and sources of information in making his determination about deficits in adaptive functioning as related to Crowe. The ALJ applied the correct standard in Listing 12.05 pertaining to deficits in adaptive functioning and his conclusions are supported by substantial evidence.

Ultimately, while Crowe's IQ test scores qualify to meet the standards in 12.05B, Crowe has failed to demonstrate that he had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . *before* age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (emphasis added). To succeed on his claim, Crowe must demonstrate that he meets the capsule definition of intellectual disability found in the first paragraph and then demonstrate that he meets at least one of the requirements in A-D. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A)(3); 12.05. Since substantial evidence exists to support the ALJ's finding that Crowe did not demonstrate an

intellectual disability before age 22, the ALJ's decision must not be disturbed.

## C. Procedural Due Process

Crowe perfunctorily argues that his procedural due process rights were violated because the ALJ cited *Masters v. Comm'r of Soc. Sec.*, No. 04-CV-570-JBC (E.D. Ky. Mar. 29, 2006), an unpublished opinion. The relevant language from the ALJ's decision is:

> In an unreported opinion, *Virgil R. Masters v. Barnhart*, Civil Action No. 04-570-JBC (E.D. Ky. March 29, 2006), Judge Jennifer Coffman noted that mental retardation "is typified by 'significant limitations in adaptive functioning' in at least two of the following [eleven] skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety."

[TR 27].

Crowe cites sparse authority in support and fails to develop his due process argument, other than noting that procedural due process applies to Social Security proceedings, explaining that counsel was unable to locate the case on Westlaw's electronic database, and observing that the case cites the fourth edition of the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders ("DSM") instead of the fifth edition.

"[T]he Due Process Clause requires that an individual is afforded notice and opportunity to be heard before deprivation of a protected interest through adjudication." *Mullane v. Cent.*

15

*Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). In a Social Security hearing, "due process requires that the proceedings be full and fair." *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620 (6th Cir. 2010) (internal citations and quotations omitted). To determine whether procedural due process is satisfied, a court must look to three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Crowe appears to argue that citation to the unpublished case denied due process because the ALJ did not provide Crowe with a copy of the opinion or make the text of the opinion part of the record; thus, because the opinion was difficult to locate, a procedural due process violation occurred. [*See* DE 13, p. 9]. Apparently, the additional process Crowe advocates for is that the ALJ either provide the text of the unpublished opinion to him directly or at least introduce the text of the unpublished opinion into the record. Alternatively, Crowe appears to argue against the use of unpublished case law as a general matter.

Under the first *Eldridge* factor, the private interest affected by the official action is potentially great. *See*

*Ferriell*, 614 F.3d at 620. Crowe has pursued his claim for disability benefits and has been denied initially, upon reconsideration, by an ALJ after a hearing, and review was denied by the Appeals Council. [TR 111, 118, 20-31, 1-6]. The Court understands that the decision of the ALJ and the subsequent decision of this Court has a substantial impact upon the financial resources of the Plaintiff.

Still, there has been no procedural due process violation here because the cited unpublished opinion in the ALJ's decision was available to Crowe and he was represented by counsel. Crowe is correct that the unpublished opinion cited in the ALJ's decision is not available on Westlaw. Regardless, if one performs a basic Google search of the case number of the cited unpublished opinion (Civil Action No. 04-570-JBC), the PDF of the full opinion is available on the website of the United States Government Publishing Office ("GPO") and the full text is available to the public without a paid subscription. Similarly, the full text of the opinion may be accessed by running a search on the Federal Digital System ("FDsys"). Federal Digital System, U.S. Gov't Pub. Off., https://www.gpo.gov/fdsys/ (last visited Aug. 16, 2018) (In the dialogue box under "Search Government Publications" type "Civil Action No. 04-570-JBC," then select "Search," then the hyperlink to access the PDF of the case without a paid subscription is available on the first page of the search results (the case text

was the fifth search result in the list)).  Finally, Judge Coffman's opinion is available in the Court's CM/ECF.

Here, the risk of erroneous deprivation is miniscule if existent.  The process that Crowe seeks, access to the unpublished opinion cited in the ALJ's decision, has been available to him all along.  Crowe does not claim that the *Masters* case provides an incorrect recitation of the DSM-IV-TR standard regarding mental retardation.  As such, the additional safeguards that he requests have no probable value.

First, Crowe argues that the ALJ should have either provided him with a copy of the text of the opinion, presumably before citing it, or that the ALJ should have put the text of the opinion in the record for Crowe to access.  But Crowe's argument fails to get off the ground.  Again, Crowe had access to the text of the *Masters* opinion.  Thus, the ALJ providing the opinion text or placing it in the record would only serve to convenience Crowe and his counsel but would not provide any additional information or procedural safeguards.

The text that the ALJ quoted from the *Masters* opinion is itself a quote from the DSM-IV-TR, which Crowe argues is improper because a new version of the DSM, the DSM-V, is available.  The argument appears to be that citation to a case that quotes a past version of the DSM constitutes error.  Crowe undercuts his own argument, however, when he cites authority that quotes the DSM-

III and provides a direct quotation to DSM-IV-TR to support his argument in his Motion for Summary Judgment. [*See* DE 13, p. 7, 9].

Additionally, there is no procedural issue or legal error here because, while the DSM-IV-TR and DSM-V do not contain precisely the same language regarding diagnostic features of mental retardation/intellectual disability, the diagnostic criteria require consideration of virtually the same factors in the DSM-IV-TR and DSM-V. As reflected in the *Masters* opinion and subsequent ALJ decision, the essential feature of mental retardation under the DSM-IV-TR "is significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. 2000)("DSM–IV–TR"). The DSM-V has condensed the skill areas listed above in to more general domains, explaining "Criterion B is met when at least one domain of adaptive functioning . . . is sufficiently impaired that ongoing support is needed in order for the person to perform adequately in one or more life settings at school, at work, at home, or in the community." Am. Psychiatric Ass'n, Diagnostic and Statistical

Manual of Mental Disorders 38 (5th ed. 2013)("DSM–V"). Here, the distinction between the two editions of the DSM is of no consequence because the diagnostic features for mental retardation/intellectual disability in both editions require consideration of the ability of a person to adequately function at school, at work, at home, or in the community.

The ALJ cited *Masters v. Comm'r of Soc. Sec.* but did not rely on the opinion as the sole basis of his decision in this matter. [*See* TR 23-31]. In fact, the ALJ's decision is based upon analysis of Listing 12.05 after a review of a voluminous record that includes the testimony of Crowe during an in-person hearing [TR 38-71], the testimony of a vocational expert [TR 71-76], opinions of a clinical psychologist and two state agency psychologists [TR 430-35, 82-83, 86-89, 98-99, 102-04], medical records and history, academic records and performance data, occupational history, and information about Crowe's personal life. Thus, the ALJ's citation to *Masters* is not the basis for his opinion and there is substantial evidence to support the ALJ's conclusions, even if the quotation from *Masters* is removed from the decision.

Alternatively, Crowe appears to suggest, as an additional procedural safeguard, that citation should not be made to unpublished judicial opinions but does not articulate how citation to such opinions harms his case or violates his due process rights.

Most judgments and opinions of the federal courts are unpublished, but lack of publication does not reflect on the efficacy or legitimacy of those opinions. It is true that unpublished decisions may not be binding or carry the same precedential value as published opinions. Still, unpublished opinions resolve important legal issues and are important persuasive authority. Moreover, there is no prohibition on citation to unpublished authority in the Joint Local Rules of Civil Practice as applicable to the United States District Court for the Eastern District of Kentucky or the Federal Rules of Civil Procedure. *See generally* E.D. Ky. LR; Fed. Rs. Civ. P.

Finally, requiring that an ALJ provide counsel with any unpublished opinion or place any unpublished opinion in the record prior to relying on it as part of the analysis in a decision would place an unreasonable administrative burden on ALJs and their staff. ALJs should be under no obligation to provide copies of publicly available unpublished authority to claimants or claimants' counsel.

Examined under the three *Eldridge* factors, the ALJ's procedure for relying upon unpublished persuasive authority from this jurisdiction does not violate the guarantees of due process.

v.

The Court, having found no legal error on the part of the ALJ and that his decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [DE 12, 13] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [DE 15] is **GRANTED**;

(3) Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 20th day of August, 2018.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge